We'll proceed with argument in the first case on the oral argument calendar, which is United States v. Sciara. Ms. Erikson. Good morning, Your Honors. I'm Patricia Erikson. Good morning, Mr. Heath. I represent Appellants Shaw and Sciara. I would like to reserve two minutes for any rebuttal that I could make to what the government presents to you. A number of issues are presented by the opening brief and the government's response. I am not going to discuss the waiver of appeal issue other than to note that this Court certainly retains jurisdiction to determine the issues brought before the Court. The fact that Ms. Sciara signed a guilty plea agreement which has a waiver of appeal only has persuasive force to this Court in the way that it's brought. Wait a second. Counsel, I have to tell you, don't blow by the waiver issue too fast because it's a big one for me, okay? We have a finding, a factual finding, by the District Court that there was no bad faith on the part of the government and that, in essence, the plea agreement is a binding contract. And in the face of that factual finding, I hear you arguing that we nonetheless somehow retain discretion to go ahead and consider the legal issues notwithstanding a valid and enforceable waiver of appellate rights? It's only a valid and enforceable waiver if this Court does not find that the plea was not breached or that the knowing and voluntariness of the agreement was not. Which gets me back to the question I asked you, which is we've got a factual finding by the District Court that the plea agreement was that the government acted in good faith and, therefore, that the plea agreement was knowingly and voluntarily entered and the clause is enforceable. So can you help me? If I want to get you to where you want me to go, how can I get there in the face of the record here? In face of the record, number one, it wasn't presented to the District Court in exactly the terms that I think the District Court could have understood how the plea was breached. We're not raising bad faith in this appeal. Bad faith was raised, and I was not a counsel then, and I don't think it was appropriately raised as bad faith. Clearly, it should have been raised as a breach of the plea agreement, because the plea agreement only gives Ms. Sciarra one right, and one right only. She agreed to everything. She agreed to every single thing. She got from the government solely a three-point reduction for acceptance of responsibility. So the one thing that the plea agreement gave her was her ability to potentially obtain a lesser sentence by cooperation. And I agree, you know, that filing the motion is at the discretion of the government. Obviously, that is true. But it comes down to, does this court want to allow the government to give a defendant nothing in a plea? Well, counsel, the consideration for the agreement is not nothing. I mean, by your own admission, she got a three-point reduction, which cuts off X number of months from her sentence. She could have put it straight up and gotten that, Your Honor. Well, maybe. But the point is that that is legal consideration for the agreement. The problem I'm having is that the onus of cooperation was on her. And as I read the record, and when I was practicing both as a criminal defense lawyer and as a prosecutor, I had this situation any number of times. Your client enters into an agreement. Your client doesn't want to cooperate with the government, but you convince the client that it's in the client's best interest to do so in the hope of getting a 5K1 reduction. And then the client blows it, basically, and doesn't cooperate and turns out to be very irascible and difficult to deal with. That's the record that I'm reading here. Am I wrong in my review of the record? Yes, sir. Correct, Your Honor. Do you think she was totally cooperative and honest with the prosecutor? The agreement was signed. She was totally cooperative. She did everything that she could to do what was required on her part. She met with a detective from Metro who told the government that he was only seeing her to determine if she'd be a State court defendant. But she answered all of his questions. He tied her down to a statement that she couldn't make any change of weight. She met with him. She would have met with Mr. Sheese, but he didn't. He wouldn't do that. She had an initial meeting, right? And that initial meeting. And that went badly. That went badly. And it went so badly that the prosecutor said, I don't believe anything that you're telling me. Then why would he enter a cooperation agreement with her, and what did she get? What was her agency? Was she not a better lawyer? I don't know. I mean, there was a change in counsel, was there not? Yes, but what was her agency to take this plea? What is it? I mean, the three-point reduction, she could have absolutely gotten two points if she pled straight up. She wouldn't have any problem being in front of this Court. Well, the hope was to get more than three points, right? And to do that, she had to substantially cooperate. And the record suggests that she didn't. And, of course, the prosecutor had the sole discretion to make that call. And the record seems to suggest that she didn't get the 5K1 reduction because she didn't earn it. Well, she didn't, wasn't truthful prior to entering a plea. Okay? I think that contract terms require that if the government is going to enter a plea agreement which the inducement is for her, the only inducement is for her to get a potentially lower sentence by cooperation, that they can't then hold her prior lying to be judging what she does after the plea agreement. But even putting aside this prior meeting, the information she provided was evaluated, I guess, by the FBI, and the judgment was it just wasn't very helpful, and therefore in the prosecutor's exercise of discretion, she didn't merit that degree of reduction. But that information sat on Mr. Shisa's desk for three months. Why is that a breach? I mean, if they had refused to meet with her, I can understand your argument. They did meet. They took the information. What they did with it then, they did ñ well, does it make any difference? It's not a reconsideration. The prosecutor is required to consider what she does to determine whether there's substantial assistance. If you have a pile of paper sitting here on your desk, you don't ever look at it. What are you considering? That's nothing on the record that said they didn't look at it. Well, I'm pretty sure Mr. Shisa did not review it. He gave it to the FBI, and he gave it to the FBI two weeks before the sentencing. And to correct Your Honor, it wasn't that it wasn't good. The FBI said they didn't have the time or the resources. Some of it was useful. Some of it was not useful. But the FBI, because it was two weeks before the sentencing, did not have the time or availability to do that. Soó His statement was something along the lines of the FBI, if the FBI came back to me and said the information is so good, we're going to do something now, then I would be making a recommendation for a downward departure. So while the information she provided had some value, it wasn't at the level where he thought it merited the downward departure. And I guess that comes to the question, why is it a breach tható Well, how is itó For information as being that helpful. Well, I have to go back to a trial-level position. How long does the government investigate mortgage fraud cases? Years. How would they be able to determine in a 10-day period whether that was, you know, something that was great or something that was only good? That's whyó That presumes that we know everything that they knew at the time they were evaluating what she was telling them. We have no way to determine from this record how long Metro and the FBI had been investigating various fraud activity that she may have had information about. So I don't see how we can accept the argument that they had no basis on which to evaluate the efficacy of the information she was proffering. Well, I'm running out of time. I would just like to say that, you know, this is a case where the courtó We'll give you two minutes. Answer Judge Talmadge's question, please. I just believe that because the government did not provide the information in three monthsóI mean, if the government had provided the information three months when the government got it and gave it to the FBI, and they said, no, there would be aóthat wouldóyour question would be the answer to the case. But because it wasn't, and because this is an inducement to the plea, they have to just, you know, have it sit on your desk and have it flow through. It doesn't mean consideration. And this was her inducement. And it is the literal terms of the agreement that must bind the prosecutor. And it was the prosecutor's duty to make that decision. He should have read it. He should have provided it to the FBI in time, because it was provided to him in time. And then they could have considered it, and we wouldn't be here with any argument  But doing that in a two-week frame is not consideration when that is the sole inducement for this plea. And I understand that it's a, you know, it's at the discretion of the government and it's consideration. But when you come down to the bare nuts and bolts of this case, the consideration, the reason for the plea was so she might get a shorter sentence. She wasn't even able to get to that point because the government didn't consider, which means more than it sits on your desk. It means something more than that. Counsel, I have one question before we sit down. Assuming we agree with all of your arguments, at the end of the day, all that happens is the plea is withdrawn. What does that get you in this case? She goes to trial. And she goes to trial, taking the risk that she's going to be convicted. She was sentenced at the low end of the range. She may end up spending up the net result if you win is that she may spend more time in prison. True? Absolutely. And she understands that? I agree with that, but we discussed it, and that's her position. She has that right. Very good. Thank you. Thank you. We'll give you two minutes for rebuttal. Thank you. Good morning. Daniel Sheese for the United States. I'm the prosecutor who handled the matter at the investigation at the sentencing level. The one point that stands out that counsel is overlooking is that at the end of the day, I recommended a downward departure of one level. That's important because while I did not deem her cooperation significant or to be of value, it was a matter of giving her credit for an effort that she made. The argument seems to be that you didn't give enough time for the FBI and others to evaluate the information, and therefore you didn't know whether it was going to be valuable or not. You recall at the hearing a continuance request was made. The defendant asked the judge to direct the FBI to consider it, and the judge said, no, if they haven't considered it, I'm not going to make them consider it, and I don't disagree with that necessarily. But that's the claim, is that really information was given and everyone blew it off. How are we supposed to analyze that? Thank you. At that first hearing where the issue was raised with the court, I asked the court for the continuance to allow the FBI to review it. I felt that the one week would be sufficient time for the FBI to review the document. I was talking about later on in the hearing or the second hearing where the defense counsel asks the court for direction for the FBI. To direct the FBI to go back and spend more time? Yes. Well, the FBI had already made their... No, I understand that. But that's the allegations made here, that basically it couldn't be considered in that time frame in a meaningful way. Well, I don't know that there's any, I'm going to rephrase that, that there is no basis in the record to suggest that the FBI couldn't review it meaningfully in the two-week period. The FBI had been investigating Ms. Sierra for a substantial length of time, which the record reflects, and during that period of time they knew a lot about her. They could take the information that she provided in writing, put it in the context of what they knew about her, knew about the investigation, and in their judgment, the FBI's judgment, the two weeks was sufficient. I thought the final information was that there were some promising potential leads, but they didn't have the time or the manpower to investigate them. Is that right? Yes. They thought that some of it may be useful, but in their perspective, and I agree with them because they gave me the information, it was relative. They may say that it has an ounce of gold worth in it, but the digging that it would take and the refining to be able to unmine that ounce of gold is not worth it for them, not worth their effort. So in taking all of that into consideration, I said to the court, look, let's give her a downward departure. I'll recommend one level for her effort. By doing that, I opened up the door to the court, the defense counsels, and say, hey, it's worth more than that. Do something different. Defense counsel did. Defense counsel asked to have the sentence reduced below that of her co-defendants, and the court rejected it, saying, no, in light of all the circumstances, the one level is appropriate. How analytically do you think we ought to approach these cases? Because on one hand, on the extreme end, you have a case where the government refuses to meet at all, and that seems to me that's probably a breach. On the other hand, you have a situation where it's pretextual, or arguably pretextual, or, I mean, as we move up the scale, where you'll say, well, we'll let you present it, but we don't think there's anything there. And then we have this, which is probably a little farther up the scale. Analytically, as an appeals court, how do we review that? The standard, which I believe needs to take place, is to look whether the court either clearly erred or abused its discretion. The court's on the front line, the district court. The district court had the opportunity to look at the facts as they were presented and to make its decision. And I think this court then needs to either look at it from a clear error standard or abuse of discretion, as it would in evaluating any factual determination that the court made. Isn't that the same standard, though? I mean, it is, by definition, an abuse of discretion if the court committed clear error, either as to the facts or the law, is it not? As to the law in that situation, I believe in this area, the standard of review is going to be split, where the court can look at the district court's legal decisions de novo, but they can look at its factual determinations for clear error. But isn't the ultimate determination on breach an abuse of discretion because you're essentially applying the law to the facts? Yes. I mean, if the facts are not in dispute. I'm sorry. I misunderstood that. Well, no, if the facts are not in dispute, or at least in essence, when we're talking about a breach of contract, it's applying law to facts. So why isn't that an abuse of discretion standard? It should be abuse of discretion. But I thought the question was the legal determination of whether the court was reviewing the sentencing guidelines or the issues that were there. Well, we throw these terms around a lot, you know, clear error and abuse of discretion, as if they are analytically distinct. And I think they're interrelated in this case. The question is, did the district court clearly err in its determination that there was no bad faith on the part of the prosecutor? If the answer here is that the defense cannot show clear error as to that factual finding, then we apply the law of enforcement of the plea agreement to the factual finding that the prosecutor did not engage in bad faith and essentially declared that it's a binding agreement. And if that's the case, as I see it, then it seems to me that we then turn to the waiver of appellate provision and enforce it. And I agree that's where we are. And since the court found no bad faith and there was a factual basis for that, even the two weeks in the court's judgment, the FBI's judgment, was sufficient time for the FBI to review the records. Then we go to the waiver. And while this court has jurisdiction to consider waiver, this court can now rule that the waiver applies and this case should be left the way it is in the district court. Let me jump ahead to a different area, if you don't mind. The court in this case made a conditional acceptance of the plea. Now, I know your position is that really what the district court was doing was conditionally accepting the plea agreement subject to review of the PSR. But the court didn't use that phrase. Is there such an animal as conditional acceptance of a plea in this context? If so, what does it mean? The rule is, as you well know, is Rule 11. I have scoured that rule to see if anywhere it authorizes a court to conditionally accept a plea. There's nowhere. The rule allows a defendant to conditionally enter a plea for the limited basis of preserving an appellate issue. Right. Rule 11B says to the court, before you can accept a plea, you must canvass the defendant on all those issues that are there. Then when you move to 11C, which talks about plea agreement, it says the court may defer accepting a plea agreement. And then it talks the basis, that is, in a binding situation. But there's no animal that says to the judge, you can conditionally accept a plea. What was the judge doing here? Do you think that the judge was trying to conditionally accept the plea agreement or was just deferring consideration of the plea until later? The records could be susceptible to both interpretations. Candidly, I don't know that he thought through it completely. Having practiced in that district, in this district for many years, that's the same colloquy, the same presentation that are used by all the district courts. And with all due respect for the district court, I think he was handed the colloquy that's passed down from generations. And I don't think anybody really thought about it in terms of the rule. I know I hadn't until the issue came up, and I started looking at it more closely, looking at the Hyde decision and said, wait a minute. If the court didn't accept the plea, then wasn't it an error not to allow the defendant to withdraw? I mean, this is assuming we reach this issue in light of the waiver issue. I mean, in other words, the plea was not accepted because, as you point out, the conditionally acceptance of a plea doesn't really exist. When the defendant moved to withdraw it, then she was entitled to do so. Well, while this whole issue of whether the court had the authority or not to enter that line, the bottom line is the defendant wasn't prejudiced by what the court said. And the reason I say that is there's no detrimental reliance on her part at the time she entered her plea of guilty. She knew that when she entered her plea that she could not willy-nilly withdraw it. And the basis for that is this. In the record, at the excerpts of records on pages 51 and 53, the court says to her, look, I have the discretion of whether to impose a sentence more severe than that recommended by the parties. And if I do, you cannot withdraw your guilty plea. You're still stuck by your plea agreement. So she knew at that time that willy-nilly withdrawal was not a basis. And so she didn't enter this plea agreement thinking that this conditional plea gave her the right to withdraw it for any reason. So no prejudice there, no harm. And Rule 11H says that the rule is to be a harmless error standard. Right, but she wants to withdraw her plea. She moves to withdraw her plea. She doesn't get the withdrawal. That's prejudice if she's entitled to withdraw it before the court accepts it. That's going back to when do you focus the harmless error. At the time she entered her change of plea or her guilty plea, she had no idea that she could willy-nilly withdraw it. She was told otherwise. She was told by the court, you will not be able to withdraw your plea if you're not happy with what goes on. So there was no withdrawal. But I'm not accepting your plea at this time? I mean, that doesn't make any sense. I don't think that with the court having been more this level of I'm not accepting your plea is a very general statement. When the court drills down into the thoughts, the details of it, it says you can't withdraw your guilty plea for no reason whatsoever. Doesn't that reflect the policy under the rule that you don't allow the party to wait until they see the pre-sentence report and get a sense of what the recommendation is and then withdraw the plea because they're afraid it may be a higher sentence than they were hoping for? It does reflect that policy. If the court accepts the plea unconditionally. I'm sorry? If the court accepts the plea unconditionally. That's the puzzle of this one. Judge, did you have some more questions? Yeah. Thank you very much for your argument. Thank you. We'll put two minutes on. Thank you, Your Honors. Starting with the statement that Mr. Sheast made that we are overlooking the fact that he. Would you mind moving closer to that? Move your mic down just a little bit. We have this problem in Las Vegas, but we have an up and down mover. It's very good. When he and I argue. You're high tech there. I know, but it's a beautiful court. At the end of the day, he recommended a one point reduction. But the fact is he made that request after telling the judge all the things of why it wasn't going to be done. That she was untruthful, that she was irascible, that she was this and she was that. So what is that opening the door to? The defense wants a united front of the government saying to the judge, yes, she substantially cooperated and these are the reasons and what she did. And then we can argue lower. But when the government stands up and says, she didn't do anything, we're not doing it. Oh, but, well, gosh, let me. I'll give one point because I want the record to be okay. That's what happened here. The – this is not an issue of bad faith, Judge. I understand that that's what it was raised at. But I think the facts are very clear that it is a – by it, it is not fulfilling the plea agreement. It's a different standard. The bad faith is extremely high. You rarely make that. I think that what we're trying to present is that these facts were in front of the district court. And the district court wasn't given the right standard of law on anything by the defense. Well, I – you're making a valiant argument here, but I'm troubled by what I read in the record, which is basically suggests to me that the client basically shot herself in the foot by virtue of the fact that she got off on – with a bad start with the first interview. The prosecutor gave her a second chance, maybe out of courtesy because she came in with a better lawyer the second time around. I don't know. But then the information that she provided wasn't all that helpful according to what the FBI told the prosecutor. So it's just one of those situations where the client could have done better but didn't And now wants more credit than what the district court thought she was entitled to get. Well, I think it goes back to the timeframe that the FBI has to discover this. And it's not about her. The information she gave was about others. I don't care if the FBI was investigating her for years. They may not have known anything about the others that she provided this extensive information about. So that's the real problem here. Why isn't the finding of bad faith a proxy for a finding of no breach under the circumstances of this case? I'm sorry, Judge? Why isn't the finding of no bad faith a proxy for a finding of no breach of contract? Because essentially the breach argument you're making today is not much different from the argument made in the district court in terms of the fact that the government didn't live up to its agreement. And the district court basically rejected that argument. And I realize it's framed as bad faith here. You're raising breach. But why is it essentially the same thing in terms of our analysis? Because the standard of review on a bad faith is exceedingly high. I mean, that's a very high burden for a defendant to have to make. And the way it was presented, it wasn't. I don't think it was bad faith. I just think it wasn't a fulfillment of the one inducement, which was to give consideration. I mean, if the court looks at the bad faith cases, it's an extremely high burden, while at the other end the burden on showing that it was a breach because the literal terms of the agreement were not followed is much lower. And that's what the difference is. I think that the judge was given the law on bad faith. He made an accurate finding that bad faith was not there, but the facts were presented to him that should have also been argued and do support that the government breached the literal terms of the plea agreement that was the inducement of the plea. And I have no time. I just wanted to make one statement that with regard to the conditional acceptance, that is not the standard colloquy. I practiced for years in front of those courts, and they don't all give that same statement. And it also goes clearly against the division of the rule. The rule sets out no reason, if not accepted, just and fair, if it's been accepted. So what – why do we have a change in the rule if the word, you know, your plea is conditionally accepted now? And the Hyde case demonstrates clearly that there's a difference between the plea agreement acceptance and the guilty plea acceptance. In this case, the guilty plea was not accepted until sentencing, and the judge recognized that at the time of sentencing. Thank you, counsel. Thank you, judges. The case just heard will be submitted.
judges: Thomas, Tallman, Ikuta